UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DANIEL GOULD,

     Plaintiff,

v.                              Case No. 5:13cv386/WS/CJK

WILLIAM CHURCHWELL, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, has filed a second amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 20). Upon review of the second amended complaint, the court concludes that all of plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, except for an Eighth Amendment claim concerning placement in a cell containing chemical agents.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Blackwater River Correctional Facility. Plaintiff initiated this lawsuit on November 15, 2013, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). On June 12, 2015, plaintiff filed his second amended complaint, the operative pleading in this action. (Doc. 20). Plaintiff's second amended complaint names seven

defendants. (Doc. 20, p. 1-3).[1] Five defendants are employees of Northwest Florida Reception Center ("NWFRC"): Warden William Churchwell, Captain J. Holden, Colonel S. Duvall, Captain J. Hassett, and Sergeant Polk. (*Id.*). The remaining two defendants are grievance respondents for the Florida Department of Corrections: C. Greene and C. Neal. (*Id.*, p. 1, 3).

Plaintiff's second amended complaint sets forth the relevant factual allegations. After plaintiff filed an unrelated civil rights action (N.D. Fla. Case No. 5:12cv185/MP/CJK) against Warden Churchwell, he was "jumped and robbed" of "most of [his] personal property except [his] radio and headphones[.]" (*Id.*, p. 9). In "late June of 2012" plaintiff requested and was placed in "AC/PM (administrative confinement/protective management)." (*Id.*). Plaintiff, however, was "denied any and all of the property alowed [sic] to inmates except what [plaintiff] had on [him] when placed in confinement." (*Id.*). After forty-five days of such confinement, plaintiff submitted informal grievances concerning the denial of his legal work and religious materials. (*Id.*, p. 9-10). The grievances "were ignored so [plaintiff] had to write grievances on the property room for refusing to reply to the grievances." (*Id.*, p. 10). Although Sergeant Angrove and Colonel Duvall approved plaintiff's grievances and indicated plaintiff would receive his property on "confinement rounds," the denial of property continued until September 6, 2012. (*Id.*). After three "confinement rounds" passed, plaintiff received part of his legal material but "not anywhere near enough for [plaintiff] to continue to defend [his] active suit." (*Id.*).

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

On October 2, 2012, plaintiff went to a "[protective management] court" led by Colonel Duvall. (*Id.*). The three "Blood Gang Members" who robbed plaintiff "said they beat [him] up and took [his] stuff over gambling debts." (*Id.*). Plaintiff provided a list of inmates who could prove that he never gambled but "[t]he list was ignored." (*Id.*). Plaintiff pointed out the three inmates who robbed him had "put at least 2 other inmates in AC/PM using the same exact [gambling] excuse." (*Id.*). "The notes of [plaintiff's] statement stopped at that point and [he] was taken back to [his] cell." (*Id.*, p. 10-11). Plaintiff asserts this occurred because "Colonel Duvall would not want it written down that Gang Members were knowingly beating up[,] robbing other inmates[,] . . . admitting it and were being protected by the highest of ranked officers on the compound." (*Id.*, p. 11). Plaintiff was denied "further protection and forced to go back to [the] general population." (*Id.*). Plaintiff claims "the Gang knew [he] was not only getting out but knew [he] was being denied protection." (*Id.*).

Plaintiff requested protective management again. (*Id.*). Plaintiff "was told . . . to report to the Captain's Office - in General Population." (*Id.*). At the Captain's Office, Sergeant Polk told plaintiff that if he "did not report to laundry [he] would get a [disciplinary report] and confinement."[2] (*Id.*). When plaintiff got to the laundry, he "was confronted by more of the Blood Gang Members." (*Id.*). Plaintiff asserts the gang members knew he was coming and knew he was being denied protective management. (*Id.*). The gang members told him "about the world of hurt and possible rape that awaited [him] at the dorm." (*Id.*). Plaintiff saw a security sergeant

---

[2] Plaintiff indicates the laundry department is an "extra secured" area set apart from the "open part of the institution." (Doc. 20, p. 11). Plaintiff further indicates the laundry department is enclosed by a locked fence, and "shake downs and metal detectors have to be passed" to enter. (*Id.*).

walking between buildings and got the sergeant's attention. (*Id.*, p. 11-12). Because he was being denied protective management, plaintiff declared a psychological emergency.[3] (*Id.*, p. 12). After being handcuffed and stripped of his property, plaintiff was taken to see a psychological specialist. (*Id.*). Plaintiff informed the specialist "what was happening and used [his] knowledge of what is considered an emergency to get . . . locked in a psych cell[.]" (*Id.*). After informing plaintiff protective management could not be denied, the specialist called Captain Holden. (*Id.*). Plaintiff was escorted to the captain's office and picked up his property at the "Center Gate" along the way. (*Id.*). When plaintiff arrived at the captain's office, Captain Holden was "obviously very angry." (*Id.*). Holden let plaintiff "know in no uncertain terms that [plaintiff] would pay for circumventing his orders, showing that Sgt. Polk's denial of [protective management] and breaking D.O.C.'s own policy was under orders." (*Id.*). Plaintiff claims Holden's actions demonstrate "the denial of [protective management] was set up to happen before [plaintiff] could request it." (*Id.*).

Plaintiff submitted a statement explaining the reasons for requesting protection. (*Id.*, p. 13). Plaintiff was escorted to confinement without his property and placed in a "stand up, single shower" and left there in handcuffs for approximately three hours. (*Id.*). Plaintiff was then placed in a cell that "was coated in chemical pepper spray." (*Id.*, p. 13-14). The cell "had no running water except the toilet–a toilet coated in oily, burning, orange pepper spray." (*Id.*, p. 14). Plaintiff indicates the cell also

---

[3] Plaintiff notes that he has "spent the majority of [his] time incarcerated at the highest of psych grades so [he] knew that the declared psych emergency [would] get [him] locked into a psych cell and off the compound." (Doc. 20, p. 12).

lacked a "mat and pillow, sheets, toothbrush and paste, toilet paper and soap[.]" (*Id.*, p. 15-16). Despite declaring psychological emergencies and complaining to corrections officers, plaintiff remained in the cell for three days. (*Id.*, p. 14). In an attempt to receive help, plaintiff broke and sharpened a piece of his glasses to cut himself. (*Id.*). Plaintiff was advised he would have to surrender the sharpened glasses arm before a psychological specialist could see him. (*Id.*, p. 14-15). An officer took the arm and wrote plaintiff a disciplinary report for possessing a weapon. (*Id.*, p. 15). Plaintiff claims a psychological specialist was never contacted. (*Id.*). Plaintiff then began to sharpen the other arm of his glasses. (*Id.*). A corrections officer eventually placed plaintiff in a shower for observation until a specialist showed up. (*Id.*).

Plaintiff was moved into a regular cell but says he still lacked his legal and religious materials. (*Id.*, p. 6). Plaintiff filed grievances about the loss of his property but the grievances were ineffective and the responses were "obvious lies." (*Id.*). After plaintiff requested materials concerning religious rights violations from the law library, his religious items were returned. (*Id.*, p. 16, 18). Plaintiff was subsequently transferred to another prison. (*Id.*, p. 17).

Based on these factual allegations, plaintiff raises several constitutional claims. First, he asserts the defendants violated his First and Fourteenth Amendment rights by confiscating legal materials, rendering him incapable of prosecuting a civil rights action involving Warden Churchwell. (*Id.*, p. 22). Next, plaintiff contends the defendants violated the Eighth Amendment by confining him to a cell covered in chemical agents for three days and denying him a "source of water other than a filthy toilet, declared psychological emergencies on numerous occasions, sleep or even a

bed roll or hygiene items." (*Id.*). Plaintiff also contends the defendants violated his Eighth Amendment rights by denying him protective custody and ordering him into an area where members of the same gang from whom he sought protection were waiting. (*Id.*). Plaintiff claims the defendants violated his Fourteenth Amendment rights by denying him access to an adequate grievance procedure. (*Id.*, p. 22-23). Finally, plaintiff says the defendants violated his Eighth Amendment rights by "stealing [his] personal property," including family photos, hygiene items and personal electronics." (*Id.*, p. 23).

For relief, plaintiff requests (1) the termination of all involved state employees with loss of pensions; (2) $75,000 to replace "all the legal work, law book, 3 years worth of grievances and personal property" the defendants stole; (3) the "time limitation to resubmit case # 5:12cv185-MP/CJK to be reset after the stolen legal work is replaced"; (4) "declaratory judgment to be kept away from NWFRC or any institution where any of the defendants work at for the remainder of [his] sentence"; and (5) "an order of protection from the state employees named as defendants in this case and in case # 5:12cv185-MP/CJK." (*Id.*, p. 24).

## DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss an *in forma pauperis* action if the court determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*,

112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))); *see also Randall v. Scott*, 610 F.3d 710, 709-10 (11th Cir. 2010) (holding that a district court determining whether to dismiss a complaint for failure to state a claim "shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570.

First and Fourteenth Amendment - Denial of Access to Courts

Plaintiff contends the defendants violated his rights under the First and Fourteenth Amendments by rendering him "incapable of complying with the court's order to rewrite a complaint naming defendant Warden Churchwell in U.S. District Court Case # 5:12cv135 MP/CJK[.]" (Doc. 20, p. 22). Specifically, plaintiff asserts the defendants deprived him of the grievances and litigation handbook he needed to prosecute his claims. Plaintiff indicates the "3 years worth of grievances" the defendants allegedly took were "essential to [plaintiff] to be able to defend [his] Civil Complaint." (*Id.*, p. 16).

Access to the courts is a constitutional right that is grounded in several constitutional amendments, including the First Amendment and the Fourteenth Amendment. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003). The doctrine of standing, however, requires that an inmate alleging a violation of this right show

an actual injury. *Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998). In order to show actual injury, a plaintiff must provide evidence that prison officials' actions impeded the inmate's pursuit of a nonfrivolous, postconviction claim or civil rights action, such as the denial or dismissal of a direct criminal appeal, habeas petition, or civil rights case. *Al–Amin v. Smith*, 511 F.3d 1317, 1332-33 (11th Cir. 2008). A plaintiff cannot state a claim by simply alleging systemic denial of access to courts or legal resources without tying the denial to an actual injury. *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998).

The court takes judicial notice of the plaintiff's earlier case entitled *Gould v. Gilo*, Case No. 5:12cv185/MP/CJK (N.D. Fla. July 28, 2014). *See* Fed. R. Evid. 201. In that case, plaintiff alleged prison officials violated his rights under the Eighth Amendment by denying him adequate medical care. *Gould v. Gilo*, Doc. 1. Plaintiff asserts that after the court directed him to file an amended complaint, he "was only able to write a more detailed explanation of what [he]'d already [incorrectly] wrote." (Doc. 20, p. 20). Plaintiff further asserts the "instructions in the Report and Recommendation were beyond my ability because the information that was needed was in the 3 years worth of grievances they took from me with all the names dates and proof of the actions that happened." (*Id.*).

Plaintiff's claims in Case No. 5:12cv185/MP/CJK, however, were not dismissed because he lacked "proof" of his allegations or because he failed to cite information contained within the grievances. Plaintiff's initial complaint, written with access to his grievances, failed to state a claim upon which relief could be granted because the allegations did not demonstrate plaintiff suffered from an objectively serious medical need or that prison officials displayed deliberate

indifference to plaintiff's condition. *Gould v. Gilo*, Doc. 38. After plaintiff was advised of the relevant legal standards concerning his claim, plaintiff filed an amended complaint that reiterated the same allegations set forth in the initial complaint. *Id.*, Doc. 43. The undersigned issued a report recommending dismissal of the case for failure to state a claim upon which relief can be granted. *Id.*, Doc. 48. The district court judge adopted the Report and Recommendation and dismissed plaintiff's claims.[4] Thus, plaintiff's lack of access to his grievances did not result in the dismissal of his case; plaintiff's factual allegations simply did not support a viable constitutional claim. Accordingly, plaintiff's current claim for denial of access to the courts fails because he has not shown the defendants' actions impeded him from pursuing a civil rights action with arguable merit. *See Gibson v. Tucker*, Case No. 4:12cv449-RH/CAS, 2012 WL 6949242 (N.D. Fla. Dec. 13, 2012) (*citing Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D. N.Y. 2010)) ("The Constitution does not guarantee the right to be successful in court, only to have 'reasonable access to the courts.'")

Eighth Amendment - Failure to Protect

In June of 2012, after he was "jumped and robbed" by members of the gang known as the "Bloods," plaintiff was placed in "administrative

---

[4] The undersigned notes that plaintiff's response to the Report and Recommendation in the earlier case is an elaborate twenty-six page document (with margin justification). The response relates, in minute detail, plaintiff's objections to the recommendation for dismissal. *Gould v. Gilo*, Doc. 53. Moreover, plaintiff was granted additional time to file objections when he complained that the "institution" had required him to submit all legal materials, in typed form "to the law clerks so they can print it out for me." *Id.*, Doc. 51. He then, according to his own allegations, proceeded to prepare his own motion to extend (again margin justified), so that the law clerks would not learn of plaintiff's medical conditions. None of this bespeaks lack of access to materials or the courts.

confinement/protective management." (Doc. 20, p. 9-10). On October 2, 2012, plaintiff went to "PM Court," where Colonel Duvall denied plaintiff protective management and returned him to the general prison population. (*Id.*, p. 10-11). Sergeant Polk, under orders from Captain Holden, denied plaintiff's request for protective management and ordered him to the laundry facility. (*Id.*, p. 11). Plaintiff contends other gang members at the laundry facility "knew [he] was coming and knew that PM was being denied. The gang members told plaintiff "about the world of hurt and possible rape that awaited [him] at the dorm." (*Id.*, p. 11). Plaintiff got the attention of a Sergeant walking between buildings, declared a psychological emergency, and was taken to a psychological specialist. (*Id.*, p. 11-12). Plaintiff asserts Warden Churchwell was the "only one who could order a Colonel to deny . . . PM status" and "[t]he only one who could order a Captain to deny [his] requests for protection." (*Id.*, p. 18-19). Plaintiff alleges the gang members knew he was going to be there, that protective custody was being denied, and that the three gang members who robbed him were protected from disciplinary action. (*Id.*).

> To make a failure to protect claim under the Eighth Amendment, [plaintiff] must plead facts that establish "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir.1995). Deliberate indifference means that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

*Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013).

Case No. 5:13cv386/WS/CJK

Here, the allegations do not show the defendants violated the Eighth Amendment by failing to protect plaintiff. Plaintiff has not alleged the defendants were deliberately indifferent to a risk of serious harm. After plaintiff's initial altercation with the Bloods in June 2012, prison officials placed him in protective management for over three months. The officials conducted a hearing and determined protective custody was no longer necessary. Even assuming all of the defendants knew plaintiff was robbed by three gang members, that is insufficient to establish that prison officials were aware that other members of the same gang posed a substantial risk of serious harm to plaintiff. *See Oliver v. Harden*, 587 F. App'x 618, 620 (11th Cir. 2014) ("In any event, a general awareness of an inmate's propensity for being violent does not satisfy the subjective awareness requirement."). Notably, plaintiff does not allege the defendants knew the gang members were in the laundry. The facts alleged, if established, do not suggest the defendants were deliberately indifferent to a substantial risk of serious harm.

Plaintiff's allegations concerning the incident are also conclusory. He alleges, without elaboration, that gang members in the laundry area knew he was coming and knew he was being denied protection. Plaintiff does not explain how these defendants could have known this information, considering, based on the chronology set forth the complaint, he had only been denied protective management moments earlier. Importantly, although plaintiff claims the gang members threatened him, he does not allege he suffered any physical harm from the incident. Plaintiff indicates he got the attention of a sergeant, declared a psychological emergency and was removed from the area. Plaintiff appears to base his failure to protect claim solely on the fact that he was denied protective management status, not that the defendants

Case No. 5:13cv386/WS/CJK

possessed subjective knowledge of a serious risk of harm and were indifferent to that risk. *See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990) (*quoting Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir.1989)) ("The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference.").

Plaintiff also claims the defendants violated DOC policy by denying plaintiff protective management. The Eleventh Circuit has held:

> the fact that [ ] officers deviated from policy or were unreasonable in their actions–even grossly so–does not relieve [the plaintiff] of the burden of showing that the officers were subjectively aware of the risk; in other words, he cannot say, "Well, they should have known." Were we to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law–a brand of negligence redux–which the Supreme Court has made abundantly clear it is not.

*Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013). Thus, even assuming the defendants violated FDOC policy by denying plaintiff protective management, that does not establish deliberate indifference. *See Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (stating "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence"). Based on the foregoing, plaintiff has failed to state an Eighth Amendment failure to protect claim.

Fourteenth Amendment - Denial of Grievances

Plaintiff claims the defendants violated his Fourteenth Amendment rights by "rendering the grievance procedure nul [sic] and void by having no investigation done and/or destroying all confinement digital camera footage making the investigations impossible." (Doc. 20, p. 23). Plaintiff asserts defendant C. Greene

Case No. 5:13cv386/WS/CJK

could have easily verified plaintiff's grievances by examining camera footage but instead "refused to hold any kind of investigation[.]" (Doc. 20, p. 13).

"A 42 U.S.C. § 1983 claim alleging a denial of procedural due process requires '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'" *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (*quoting Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.2003)). "An inmate has no constitutionally-protected liberty interest in access to prison grievance procedures." *Id.* (*citing Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011)). Thus, allegations that a defendant simply denied plaintiff's grievances or failed to investigate the allegations in a grievance fail to state a claim for a constitutional violation. *Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005) (holding the failure of prison officials to take corrective action upon filing of plaintiff's administrative appeal did not amount to a violation of due process); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."). Because plaintiff merely asserts that grievance respondents failed to investigate his grievances, plaintiff's allegations fail to state a claim upon which relief can be granted. One can scarcely imagine a federal court system in which each denied prisoner grievance would lead to a civil rights action.

Eighth Amendment - Deprivation of Property

Plaintiff claims the defendants violated his Eighth Amendment rights by "stealing [his] personal property" including "irreplaceable family photos, hygiene items and personal electronics." Plaintiff cannot recover under § 1983 for the alleged

loss of his property because the deprivation of plaintiff's personal property does not constitute an Eighth Amendment violation. *Daniel v. McDonough*, No. 3:08cv164/MCR/MD, 2008 WL 5156689, at *2 (N.D. Fla. Dec. 9, 2008) ("The deprivation of personal property does not meet the standard for an Eighth Amendment violation.").

The deprivation of personal property also does not constitute a violation of the Fourteenth Amendment. The Supreme Court has held that "an unauthorized intentional deprivation of property by a state [or municipal] employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The State of Florida provides plaintiff with an adequate post-deprivation remedy for the loss of his property – prisoners may file a tort claim action in state court in order to recover damages for property losses. *See* Fla. Stat. § 768.28. Because plaintiff has access to an adequate post-deprivation remedy, he cannot state a plausible claim that defendants' unauthorized acts–whether negligent, willful, or intentional–resulting in the loss or deprivation of plaintiff's property violated the Constitution. *See Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("*Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred."); *see also Taylor v. McSwain*, 335 F. App'x 32, 34 (11th Cir. 2009) ("[A] state employee's unauthorized intentional deprivation of an inmate's property does not violate due process under the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.") (*citing Hudson*, 468 U.S. at 533)); *Weaver v. Geiger*, 294 F. App'x 529, 533 (11th Cir. 2008) (holding that Fla. Stat. §

768.28 qualifies as the type of "meaningful remedy" required under *Hudson*). Plaintiff's deprivation of property claim, therefore, fails to state a claim upon which relief can be granted and is subject to dismissal.

CONCLUSION

Based on the foregoing, the only viable claim in plaintiff's complaint is the one asserting his Eighth Amendment rights were violated when he was placed into a cell coated with chemical agents. Plaintiff's second amended complaint, however, fails to specify the individual(s) responsible for placing him into the tainted cell. Thus, if this Report and Recommendation is adopted, plaintiff will be directed to file a third amended complaint identifying the individuals responsible for placing him into the cell containing chemical agents. Plaintiff is advised, however, that under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Because plaintiff has not alleged he suffered any physical injury as a result of his placement into a cell containing chemical agents, he is limited to recovering nominal damages (ordinarily $1.00). *See Brooks v. Warden*, 800 F.3d 1295, 1307-09 (11th Cir. 2015) (holding that, under the PLRA, nominal damages are recoverable without a showing of physical injury).

Accordingly, it is respectfully RECOMMENDED:

1.      That the following claims be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief can be granted:

        a.      Plaintiff's First and Fourteenth Amendment claims for denial of
                access to the courts.

Case No. 5:13cv386/WS/CJK

   b.  Plaintiff's Eighth Amendment failure to protect claim.

   c.  Plaintiff's Fourteenth Amendment denial of grievances claim.

   d.  Plaintiff's Eighth Amendment deprivation of property claim.

  2.  That this matter be referred to the undersigned for further proceedings on plaintiff's Eighth Amendment claim based on his placement into a cell containing chemical agents.

  3.  That plaintiff be directed to file a third amended complaint as instructed above within thirty (30) days from the date this Report and Recommendation is adopted, in the event he wishes to pursue the remaining claim.

  At Pensacola, Florida, this 10th day of November, 2015.

       /s/ *Charles J. Kahn, Jr.*

       **CHARLES J. KAHN, JR.**
       **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S.Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.